**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RONALD W.,[1] | : | Case No. 2:25-cv-00616 |
| | : | |
| Plaintiff, | : | District Judge Algenon L. Marbley |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | |
| | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION[2]**

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income in June 2022. Plaintiff's claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, the

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] *See* 28 U.S.C. § 636(b)(1). The notice at the end of this opinion informs the parties of their ability to file objections to this Report and Recommendation within the specified time period.

undersigned Magistrate Judge **RECOMMENDS** that the Commissioner's decision be

**AFFIRMED**.

I.      BACKGROUND

Plaintiff asserts that he has been under a disability since December 31, 2019. At

that time, he was fifty-six years old and was considered a "person of advanced age" under

the Social Security regulations. 20 C.F.R. §§ 404.1563(e), 416.963(e).[3] Plaintiff was

"closely approaching retirement age" on the date the ALJ issued her decision. *Id.* Plaintiff

has a "high school education and above." 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No.  8) is summarized in

the ALJ's decision ("Decision," Doc. No. 8-2 at PageID 61-77), Plaintiff's Statement of

Errors ("SE," Doc. No. 9), the Commissioner's Memorandum in Opposition ("Mem. In

Opp.," Doc. No. 12), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 13). Rather

than repeat these summaries, the Court will discuss the pertinent evidence in its analysis

below.

II.     STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and

Supplemental Security Income to individuals who are under a "disability," among other

eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42

U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any

substantial gainful activity by reason of any medically determinable physical or mental

---

[3] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v.*

3

*Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III. FACTS

### A. The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's applications for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

| | |
|---|---|
| Step 1: | Plaintiff has not engaged in substantial gainful activity since December 31, 2019, the alleged onset date. |
| Step 2: | He has the severe impairments of right-sided hearing loss, tinnitus, and asthma. |

4

> He has the nonsevere impairments of hypothyroidism, benign prostatic hyperplasia, status post phlebectomy bilaterally for varicose veins, thoracic and cervical somatic dysfunction, pes planus bilaterally, hallux rigidus bilaterally, obesity, hypertension, generalized anxiety disorder, bipolar disorder, major depressive disorder, cannabis abuse disorder, and alcohol abuse disorder.

Step 3:   He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:   His residual functional capacity (RFC), or the most he can do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of work at all exertional levels, subject to the following nonexertional limitations: "[Plaintiff] can tolerate occasional exposure to atmospheric conditions and a very loud noise environment as those terms are defined in the SCO. He is capable of tolerating occasional exposure to workplace hazards such as moving machinery or unprotected heights."

He is able to perform his past relevant work as a salesperson, waiter, and salesclerk, both as actually and generally performed.

(Decision, Doc. No. 8-2 at PageID 66-73.) These findings led the ALJ to conclude that

Plaintiff does not meet the definition of disability. (*Id.* at PageID 73.)

## B.    The ALJ's Evaluation Of Plaintiff's Mental Impairments

The ALJ noted that she was required to "consider all of [Plaintiff's] impairments,

including impairments that are not severe" in determining Plaintiff's RFC. (Decision,

Doc. No. 8-2 at PageID 66.) At Step Two, the ALJ found that Plaintiff's generalized

anxiety disorder, bipolar disorder, major depressive disorder, cannabis abuse disorder,

and alcohol abuse disorder are nonsevere. (*Id.* at PageID 67.) The ALJ explained that she

considered the "paragraph B" criteria and concluded that Plaintiff's mental impairments

cause no more than mild impairment in any of the functional areas. (*Id.* at PageID 68-69.)

5

Specifically, in the first functional area of understanding, remembering, or applying information, the ALJ found that Plaintiff had no limitation. (*Id.* at PageID 68.) She explained: "The medical evidence did not document limitations in memory on mental status examination (Exhibit 9F)." (*Id.*) The ALJ found mild impairment in Plaintiff's ability to interact with others and reasoned: "In this area, [Plaintiff] has mild limitation. [Plaintiff] reported irritability with people while working (Exhibit 9F p. 69). [Plaintiff] reported seeing his mother on the weekend and going to church (Exhibit 9F p. 13)." (*Id.*) As for concentrating, persisting, or maintaining pace, the ALJ found mild impairment. (*Id.*) She explained: "[Plaintiff] reported irritability with people while working (Exhibit 9F p. 69). [Plaintiff] reported seeing his mother on the weekend and going to church (Exhibit 9F p. 13)." In the final area of adapting or managing oneself, the ALJ found mild impairment and stated: "[Plaintiff] was able to sell his house and move to a new state where he started working at Kroger (Exhibit 9F p. 69)." (*Id.*)

Next, the ALJ discussed the outpatient mental health treatment records. (Decision, Doc. No. 8-2 at PageID 68-69.) The ALJ cited and summarized the mental status examination findings and Plaintiff's reports of participating in daily activities, as follows:

> [Plaintiff] reported that he stopped drinking alcohol just before the alleged onset date. [H]e also reported anxiety. No abnormal psychiatric findings were noted during this initial evaluation (Exhibit 2F p. 32). Treatment records from around the alleged onset date noted reports of alcohol use with related anxiety and depression. [Plaintiff] reported sobriety without cravings and indicated he was working in his yard and planned to start fishing mor [sic]. He was taking Adderall to be more sociable and Xanax to help with sleep (Exhibit 1F p. 23). Mental status findings noted a euthymic mood with intact concentration and memory. He was prescribed Zoloft, Remeron, Xanax, and Adderall. He reported some relationship issues with selling a house and considered moving to Florida for the good fishing

6

(Exhibit 1F p. 19). In April 2020, hip speech was tangential, but mood remained euthymic on examination (Id. at 16). [Plaintiff] reported feeling happy and stable with minimal anxiety by May 2020. He remained sober. He reported feeling more confident and pained [sic] his house and completed other projects (Exhibit 1F p. 8). By June 2020, he reported feeling stable with a good mood that is "constant." A mental status examination noted a euthymic mood, normal speech, congruent affect, and fair insight (Exhibit 1F p. 4).

During a consultative examination in 2022, [Plaintiff] denied any panic attacks in more than 4 years, but he reported smoking marijuana to calm his nerves (Exhibit 5F).

When he restarted treatment in May 2022, [Plaintiff] reported he was working at Kroger Fuel 5 hours per night. He stated that he recently started drinking again after 5 years of sobriety. While he reported taking Sertraline daily, he stated he had not taken Xanax in a while, but the author noted [Plaintiff] had recently refilled this medication and had been prescribed Xanax by three different providers since 2020 (Exhibit 9F p. 69). An initial mental status examination noted an anxious mood and affect, but organized thoughts, appropriate attention, and a cooperative attitude. The examiner assessed alcohol abuse and generalized anxiety disorder and added Buspar to the medication regimen (Exhibit 9F p. 71). During a follow up, he reported alcohol sobriety, but regular marijuana use. He indicated a "good" mood and starting a regular diet and exercise program (Id. at 63). [Plaintiff] also received Vivitrol injections for alcohol abuse (Exhibit 9F).

After a gap in treatment with missed appointments, [Plaintiff] returned for evaluation in August 2023. He reported moving in with his mother temporarily after she had surgery. He reported working cleaning hot tubs. He returned to his home on the river and reported being "much happier." While he denied alcohol use, he admitted using THC regularly. He was continued on Sertraline and was also prescribed Abilify (Exhibit 9F p. 9).

(*Id.*)

The ALJ concluded:

[Plaintiff's] mental health history suggests generally mild findings of depression and anxiety that respond to medication and therapy when he consistently attends treatment. Moreover, his symptoms appear to improve with cessation of alcohol use. Finally, [Plaintiff] was able to sell a house, move, work various jobs, interact with others, and otherwise perform a

7

> wide range of activities despite his reported symptoms. These activities
> support the conclusion that [Plaintiff] has no more than mild limitations.

(*Id.* at PageID 69.)

Finally, the ALJ explained how her "paragraph B" conclusions applied to the

sequential evaluation steps:

> The limitations identified in the "paragraph B" criteria are not a residual
> functional capacity assessment but are used to rate the severity of mental
> impairments at steps 2 and 3 of the sequential evaluation process. The
> mental residual functional capacity assessment used at steps 4 and 5 of the
> sequential evaluation process requires a more detailed assessment. The
> following residual functional capacity assessment reflects the degree of
> limitation the undersigned has found in the "paragraph B" mental function
> analysis.

(*Id.*)

The ALJ also addressed Plaintiff's mental impairments in the RFC analysis at Step

Four. (Decision, Doc. No. 8-2 at PageID 70-71.) In her explanation of the applicable

regulations for determining Plaintiff's RFC, the ALJ noted that she "considered ***all***

symptoms." (*Id.* at PageID 70 (emphasis added).) Next, after describing the applicable

legal standard for evaluating Plaintiff's subjective complaints, the ALJ summarized

Plaintiff's testimony during the March 2024 hearing as follows:

> [Plaintiff] testified that he could not continue working due to anxiety issues.
> He stated that he becomes frustrated when working and is short tempered.
> He noted he had held about 40 jobs in his lifetime. [Plaintiff] testified that
> he stopped drinking alcohol in 2018, but also stated that he drank "a few
> beers" a few weeks earlier. [Plaintiff] testified that he worked in a
> restaurant for 7 years.

(*Id.*) The ALJ concluded that although Plaintiff's impairments could reasonably be

expected to cause his alleged symptoms, the "intensity, persistence and limiting effects of

these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.*)

The ALJ then addressed the prior administrative medical findings in the record related to Plaintiff's mental impairments. (Decision, Doc. No. 8-2 at PageID 71.) The ALJ summarized the findings of the state agency psychological consultants and found them to be persuasive. (*Id.*) The ALJ stated:

> The prior administrative medical findings determined [Plaintiff's] mental impairments were non-severe (Exhibits 2A, 4A, 6A and 8A). These findings are persuasive as they are supported by the findings of fact which discussed the evidence of an anxious mood, but otherwise unremarkable mental status findings. These findings are also consistent with the other medical evidence, which noted symptoms appear to improve with cessation of alcohol use. Moreover, [Plaintiff] was able to sell a house, move, work various jobs, interact with others, and otherwise perform a wide range of activities despite his reported symptoms. These activities support the conclusion that [Plaintiff's] mental impairments are non-severe (Exhibits 2F and 9F).

(*Id.*)

Finally, after addressing the opinions and prior administrative findings related to Plaintiff's physical impairments, the ALJ included certain limitations in the RFC:

> The medical evidence discussed above support the limitations in the residual functional capacity. [Plaintiff] is limited to occasional exposure to atmospheric conditions and occasional exposure to very loud noise due to his asthma, tinnitus, and sensorineural hearing loss.

(Decision, Doc. No. 8-2 at PageID 72.)

### C. VE Testimony

The ALJ asked the vocational expert (VE) who testified at the March 2024 hearing whether an individual with Plaintiff's vocational profile (i.e., the same age, education,

and work history) and the RFC identified in the decision could perform any of Plaintiff's past relevant work. (AR, Doc. No. 8-2 at PageID 92.) The VE stated that such an individual could perform Plaintiff's past relevant work as a salesperson, waiter, and salesclerk, both as the jobs are generally performed and as Plaintiff actually performed them. (*Id.* at PageID 92-93.)

In response to an additional hypothetical posed by the ALJ, the VE testified that an individual with the ALJ's RFC but with additional limitations—for "work tasks that are not at an assembly line or a production rate pace, or involving any strict production quotas," and for occasional interaction with coworkers and the general public—would be unable to perform Plaintiff's past relevant work. (*Id.* at PageID 93-94.) The VE explained that the limitation for occasional contact with the public, on its own, would preclude Plaintiff's past relevant work. (*Id.* at PageID 94.)

The VE further testified that although such an individual would be unable to perform Plaintiff's past relevant work, the individual could perform other work in the national economy. (*Id.* at PageID 94.) According to the VE, such an individual could perform the following medium, unskilled (Specific Vocational Preparation (SVP) of 2) jobs: Salvage Laborer, Dictionary of Occupational Titles (DOT) code 929.687-022, approximately 50,000 positions nationally; Linen-Room Attendant, DOT code 222.387-030, approximately 35,000 positions nationally; and Hand Packager, DOT code 920.587-018, approximately 200,000 positions nationally. (*Id.* at PageID 94.)

## IV.    LAW AND ANALYSIS

Plaintiff asserts just one error: The ALJ "failed to either adopt mental limitations she found credible in her residual functional capacity (RFC) finding or to explain why she was omitting these admittedly credible limitations." (SE, Doc. No. 9 at PageID 772.) For the reasons discussed below, the undersigned concludes that Plaintiff's asserted error is not well-taken and therefore recommends that the ALJ's decision be affirmed.

### A.    Applicable Law

An ALJ evaluates the severity of a claimant's impairments at Step Two of the sequential evaluation. 20 C.F.R. § 404.1520(a)(4)(ii). Plaintiff bears the burden of establishing that she has a severe impairment that meets the twelve-month duration requirement. *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012); 20 C.F.R. §§ 404.1509 & 404.1520(a)(4)(ii). An impairment is severe if it "significantly limits [an individual's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). "Basic work activities" include the abilities and aptitudes necessary to perform most jobs, such as the abilities to carry out simple instructions, use judgment, respond to supervisors and coworkers, and deal with changes in a routine work setting. 20 C.F.R. § 404.1522(b).

An impairment is not severe if the "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work ...." Social Security Ruling (SSR) 85-28,

11

1985 WL 56856, at *3 (S.S.A. January 1, 1985).[4] "Nonsevere impairments do not necessarily cause functional limitations." *Stephen T. C. v. Comm'r of Soc. Sec.*, No. 1:23-cv-10821, , at *6 (E.D. Mich. Mar. 5, 2024) (citing *Taylor v. Berryhill*, No. 17-11444, 2018 WL 3887521, at *6 (E.D. Mich. July 5, 2018); SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996)).

Additionally, the regulations require an ALJ to follow a "special technique" when evaluating the severity of mental impairments. 20 C.F.R. 404.1520a; *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 282 (6th Cir. 2009). An ALJ "must first evaluate [a claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [the claimant has] a medically determinable mental impairment(s)." 20 C.F.R. § 404.1520a(b)(1). Next, the ALJ must "rate the degree of functional limitation resulting from the impairment(s)" in the following four broad functional areas: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." *Id.* § 404.1520a(b)(2), (c). "These four functional areas are commonly known as the 'B criteria.'" *Rabbers*, 582 F.3d at 653 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 et seq.).

The ALJ will rate the degree of limitation in the four functional areas using a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). If the ALJ rates the degrees of limitation as "none" or "mild," then the ALJ "will generally

---

[4] Although SSRs do not have the same force and effect as statutes or regulations, they "are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner." *Ferguson v. Comm'r of Soc. Sec.*, 628  F.3d 269, 272 n.1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)).

conclude that [the] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Id.* § 404.1520a(d)(1). Notably, mild limitations in the four functional areas do not automatically mandate specific limitations in the RFC. *See Caudill v. Comm'r of Soc. Sec.,* No. 2:16-CV-818, 2017 WL 3587217, at *6 (S.D. Ohio Aug. 21, 2017) (Vascura, M.J.) (collecting cases), *report and recommendation adopted* No. 2:16-CV-818, 2017 WL 4222983 (S.D. Ohio Sept. 21, 2017) (Smith, D.J.). "Even so, although a nonsevere mental impairment standing alone may have only a minimal impact on an individual's ability to do basic work activities, it may contribute to a claimant's functional limitations when considered in combination with other impairments." *Stephen T. C.*, 2024 WL 948592, at *6 (E.D. Mich. Mar. 5, 2024) (internal quotations omitted) (citing SSR 96-8p, 1996 WL 374184, at *5).

Finally, it is well-established that determination of the RFC is a task reserved for the ALJ. 20 C.F.R. § 404.1546(c). A claimant's RFC describes the most he can do in a work setting despite his physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). When formulating the RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). The ALJ must base the RFC on all relevant evidence in the record, including the claimant's descriptions of her limitations and symptoms, objective medical evidence, medical opinions, other medical evidence, evidence from non-medical sources, and prior administrative medical findings. *See* 20 C.F.R. § 404.1545(a)(1)-(5).

  **B.  The ALJ Did Not Reversibly Err When Analyzing Plaintiff's Mental Impairments.**

    **1.  The ALJ adequately addressed Plaintiff's mental impairments.**

Initially, Plaintiff argues that a "fundamental tenet of disability law … specifically mandates that in assessing disability 'the combined impact' of all impairments must be considered." (SE, Doc. No. 9 at PageID 773-74 (citations omitted).) Although this proposition is true, ALJs in the Sixth Circuit need not expressly state that they considered a claimant's impairments in combination. *E.g.*, *Emard*, 953 F.3d at 851-52 ("[T]he ALJ's statements that she had considered the entire record and all of [the claimant's] symptoms suggest that she had considered [the claimant's] impairments in combination"); *Gooch v. Sec'y of Health and Hum. Servs.*, 833 F.2d 589, 591-92 (6th Cir. 1987) ("[A]n ALJ's statement that he had conducted 'a thorough review of the medical evidence of record,' along with the fact that the ALJ had considered the claimant's impairments individually, sufficed to show that the ALJ had considered the impairments in combination."). The Sixth Circuit has explained that "[t]o require a more elaborate articulation of the ALJ's thought processes would not be reasonable." *Gooch*, 833 F.2d at 591-92. Here, the ALJ stated that she conducted "careful consideration of the entire record" and then considered Plaintiff's claimed mental impairments individually. (Decision, Doc. No. 8-2, PageID 66-68.) No more was required.

Notably, Plaintiff does not challenge either the ALJ's findings in the "paragraph B" areas of functioning or the ALJ's conclusion that Plaintiff's mental impairments are non-severe. (*See generally* SE, Doc. No. 9; Reply, Doc. No. 13.) Nor does Plaintiff

challenge the ALJ's assessment of the medical evidence or the opinion evidence.[5] Rather,

Plaintiff's chief argument is that the ALJ wrongly omitted mental functional limitations

from the RFC and, further, wrongly failed to explain that omission.

It is true, as Plaintiff argues, that some courts have held that if an ALJ finds mild

limitations in the "paragraph B" areas at Step Two, then the ALJ must either incorporate

those findings into the RFC or explain why the mild deficits do not cause any functional

limitations. But as Defendant points out, the Sixth Circuit has not adopted such a rule.

(Mem. In Opp., Doc. No. 12 at PageID 799-800 (citing *Napier v. Comm'r of Soc. Sec.*,

127 F.4th 1000, 1002 (6th Cir. 2025)).

In *Napier*, the plaintiff argued that the ALJ had "inappropriately ignored her mild,

non-severe mental impairments in formulating her residual functional capacity." 127

F.4th at 1007. The Sixth Circuit disagreed, holding that "[t]he record clearly

demonstrates that the ALJ adequately accounted for Napier's mental impairments in

formulating her residual functional capacity." Specifically:

1) "In explaining the required five-step process for addressing Napier's application, the ALJ noted that in determining Napier's residual functional capacity, he was required to 'consider all of the claimant's impairments, including impairments that are not severe'";

2) "After concluding that Napier's mental impairments were no more than mild, the ALJ explicitly stated that his 'residual functional capacity assessment used at steps 4 and 5' later in his decision reflected the 'degree of limitation' that the ALJ had found in the 'mental function analysis'"; and

---

[5] Plaintiff states: "This issue has nothing to do with how the ALJ weighed the medical evidence or what medical opinions and other facts were considered." (SE, Doc. No. 9 at PageID 775 n.2.)

3) "[T]he ALJ later noted that in concluding that Napier had the 'residual functional capacity to perform light work,' he had 'considered all symptoms.'"

*Id.* The Sixth Circuit acknowledged that there may be "occasions where, in context, similar statements would be insufficient." *Id.* However, *Napier* was "not such a case" given "the substantial evidence supporting the ALJ's findings that Napier's limitations were no more than mild and the ALJ's repeated statements that it took all of Napier's limitations into account." *Id.*

The undersigned concludes that *Napier* is on all fours with this case. First, the ALJ stated that she accounted for all of Plaintiff's impairments, including non-severe mental impairments, when assessing the RFC. (Decision, Doc. No. 8-2 at PageID 66 ("In making this [RFC] finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe.")). This statement is consistent with *Napier*.

Next, the ALJ concluded that Plaintiff's mental impairments did not impose more than mild limitations, then stated: "The mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following [RFC] assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (Decision, Doc. No. 8-2 at PageID 69). This statement is consistent with *Napier*.

Finally, the ALJ described the RFC and then explained: "In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted …." (Decision, Doc. No. 8-2 at PageID 70.) This statement is also consistent with *Napier*.

16

Accordingly, the undersigned finds that the ALJ "adequately accounted for [Plaintiff's] limitations in the residual functional capacity analysis," *Napier*, 127 F.4th at 1007, and no more was required.

Plaintiff argues that *Napier* is inapplicable because it "has nothing whatsoever to do with a case like this one where the issue is the capacity to perform skilled and semi-skilled work." (SE, Doc. No. 13 at PageID 803.) It is true that the *Napier* ALJ concluded that the plaintiff could perform past relevant work that was unskilled,[6] and the ALJ in this case concluded that Plaintiff can perform past relevant work that is at least semi-skilled. (Decision, Doc. No. 8-2 at PageID 72-73.) But this is a distinction without a difference. Plaintiff cites no Sixth Circuit case that mandates different articulation requirements when formulating the RFC based on the skill level of a claimant's past relevant work.

In sum, the undersigned concludes that the ALJ adequately considered and discussed Plaintiff's mild mental impairments and was not required to do more. Plaintiff's assignment of error therefore is not well taken.

### 2. Even if the ALJ erred by failing to more fully address Plaintiff's mental impairments, any such error would be harmless.

Plaintiff also argues that because "the ALJ's entire decision rests upon [Plaintiff's] ability to perform past semi-skilled work" and because the ALJ "made no alternative step five finding," the ALJ's decision to omit mental limitations from the RFC without further explanation "is a critical and prejudicial error." (SE, Doc. No. 9 at PageID 777.)

---

[6] The ALJ in *Napier* found that the plaintiff could perform his past relevant work as a cashier. 127 F.4th at 1004. According to the Dictionary of Occupational Titles, the cashier job is unskilled and involves a Specific Vocational Preparation (SVP) of 2. DICOT 211.462-010, 1991 WL 671840 (4th ed., Rev. 1991).

However, the inclusion of mental limitations in the RFC to address the "paragraph B" areas of mild limitation identified by the ALJ would not have changed the ultimate outcome of the ALJ's decision. Therefore, even if the ALJ did not sufficiently explain her decision not to include any mental limitations in the RFC, any such error is harmless.

The ALJ bears the burden at Step Five of the sequential evaluation process to establish that a significant number of jobs exist in the national economy that Plaintiff can perform. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citation omitted); 20 C.F.R. § 404.1566. The Medical-Vocational Guidelines, also known as the Grid Rules, apply at the final step of the sequential disability analysis. 20 C.F.R. § 404.1569. When the findings of fact as to each relevant component of the Grid Rules "coincide with all of the criteria of a particular rule," the applicable rule directs a conclusion about whether the claimant is disabled. 20 C.F.R. Subpt. P, App. 2, § 200.00; *Kirk v. Sec'y of Health & Hum. Servs.*, 667 F.2d 524, 528 (6th Cir. 1981). But if "any one of the findings of fact does not coincide with the corresponding criterion of a rule," then the rule "is only used as a guide to the disability determination." *Id.*; *see also Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003) (when a claimant's impairments "do not precisely match any specific rule," the RFC "is used as the appropriate framework to determine whether she is disabled"). The ALJ "must rely on other evidence to determine whether a significant number of jobs exist in the national economy that a claimant can perform." *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 424 (6th Cir. 2008) (citing *Burton v. Sec'y of Health & Hum. Servs.*, 893 F.2d 821, 822 (6th Cir. 1990)).

18

When determining which Grid Rule applies, an ALJ must consider a claimant's chronological age "in combination with [the claimant's] residual functional capacity, education, and work experience." 20 C.F.R. § 404.1563(a). Plaintiff was a "person of advanced age" on the alleged disability onset date and was "closely approaching retirement age" on the date the ALJ issued her decision. 20 C.F.R. § 404.1563(e). He has a "high school education and above." 20 C.F.R. § 404.1564(b)(4). The ALJ concluded that Plaintiff can perform a full range of work at all exertional levels, and the RFC only included nonexertional limitations. (Decision, Doc. No. 8-2 at PageID 69-70.) Plaintiff's past relevant work was semi-skilled. (Decision, Doc. No. 8-2 at PageID 72.)

Here, had the ALJ proceeded to Step Five of the sequential evaluation process, Grid Rule 204.00 would have applied—and it does not direct a finding of disability. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 204.00. The ALJ therefore would have applied the framework of Grid Rule 204.00, and the VE's testimony would have supplied "other evidence" that Plaintiff could perform other jobs in the national economy.

As stated above, the VE testified that an individual with Plaintiff's vocational profile and the RFC identified in the decision, but with additional mental limitations (for no assembly line or production rate pace work, no strict production quotas, and occasional interaction with coworkers and the general public), could perform three medium and unskilled jobs: Salvage Laborer, Linen-Room Attendant, and Hand Packager. (AR, Doc. No. 8-2 at PageID 93-94.). The mental limitations in the hypothetical posed to the VE more than adequately account for the mild limitations that the ALJ found in the "paragraph B" areas of interacting with others, concentrating,

19

persisting, or maintaining pace, and adapting or managing oneself. Thus, the VE's testimony is sufficient to support a non-disability determination at Step Five of the sequential evaluation process. *See Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (an ALJ may rely on VE testimony in response to a hypothetical question if the question accurately portrays the claimant's impairments).

Accordingly, even if the ALJ erred because she failed to explain, or provided an insufficient explanation, about why she did not include any mental limitations in the RFC, any such error would be harmless. *See Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 547 (6th Cir. 2004) ("We are not required to remand where to do so would be an idle and useless formality") (citation omitted); *Mabrey v. Comm'r of Soc. Sec.*, No. 1:13-cv-555, 2015 WL 556435, at \*5 (S.D. Ohio Feb. 10, 2015) (Litkovitz, M.J.), *report and recommendation adopted*, No. 1:13cv555, 2015 WL 1412205 (S.D. Ohio Mar. 26, 2015) (Dlott, D.J.) ("Even though the ALJ did not proceed to [step five] of the sequential evaluation process, the ALJ's decision should nonetheless be affirmed given that substantial evidence supports the decision and remand would be a useless formality.").

**IT IS THEREFORE RECOMMENDED THAT**:

1. Plaintiff's Statement of Errors (Doc. No. 9) be OVERRULED;

2. The Court AFFIRM the Commissioner's non-disability determination; and

3. The case be terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

20

**DEADLINE TO FILE OBJECTIONS**

In accordance with Rule 72(b)(2) of the Federal Rules of Civil Procedure, any party may file and serve specific written objections to this Report and Recommendation ("R&R") **within fourteen (14) days** after being served with a copy. A party may respond to another party's objections **within fourteen (14) days** after being served with a copy. If necessary, the objecting party must promptly arrange for transcribing the record, or whatever portions of it to which the parties agree or the Magistrate Judge considers sufficient. If proper objections are timely filed, then the District Judge will conduct a de novo review of the challenged portion(s) of the R&R. Failure to file timely objections may forfeit rights on appeal. *See U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).